# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

KYLEE MARTINEZ, individually, )
and as Next of Kin and the )
Personal Representative for the Estate of )
ANTHONY MARTINEZ, )
 )
   Plaintiff, )
 )
v. )  Case No. CIV-23-102-RAW-GLJ
 )
DEPUTY SKYLER SELLERS, in his )
individual and official capacity as a )
Deputy with the Adair County Sheriff's )
Department; JASON RITCHIE, )
in his official capacity as )
Sheriff of Adair County, State of )
Oklahoma; ADAIR COUNTY BOARD )
OF COMMISSIONERS, )
 )
   Defendants. )

## REPORT AND RECOMMENDATION

   This matter comes before the Court on motions for partial dismissal and/or total dismissal by all three Defendants in this case. Plaintiff Kylee Martinez, acting individually and as next of kin and Personal Representative for the Estate of Anthony Martinez, deceased, sues Adair County Sheriff Deputy Skyler Sellers ("Sellers") in his individual and official capacities, Sheriff Jason Ritchie ("Sheriff") in his official capacity, and the Adair County Board of County Commissioners ("Board"). Plaintiff alleges various Fourth Amendment violations pursuant to 42 U.S.C. § 1983, as well as Oklahoma state law claims against Defendants, arising out of an attempted traffic stop of Decedent Anthony Martinez

by Deputy Sellers that eventually resulted in the Decedent's death.  Defendants move to dismiss some or all of Plaintiff's seven causes of action.  For the reasons set forth below, the undersigned Magistrate Judge recommends that Sheriff Jason Ritchie's Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 74] be GRANTED IN PART and DENIED IN PART, that The Board of County Commissioners of Adair County's Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 76] be GRANTED IN PART and DENIED IN PART, and that Skyler Sellers' Motion to Strike, or in the Alternative Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 75] be GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY & BACKGROUND

Plaintiff filed this case on March 20, 2023 [Docket Nos. 1-2], naming Sellers and the Board.  The Court referred the case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 on September 5, 2023 [Docket No. 23].  Plaintiff filed a First Amended Complaint, naming only Sellers and the Sheriff, on May 15, 2023 [Docket No. 16].  On October 10, 2023, Plaintiff moved to file a Second Amended Complaint to add the Board back into the case [Docket No. 38].  The undersigned Magistrate Judge recommended that the motion be granted, and the Court affirmed and adopted that recommendation [Docket Nos. 58, 62].  Plaintiff ultimately filed the Second Amended Complaint on March 11, 2024 [Docket No. 70], and each Defendant has moved for partial or full dismissal of the Second Amended Complaint [Docket Nos. 74, 75, 76].

The Second Amended Complaint alleges that on June 29, 2021, the Decedent and another woman were on a motorbike when Sellers observed them while he was on duty as an Adair County Deputy Sheriff.  Sellers reported observing Decedent speeding and operating a vehicle without a tag, and activated his lights to initiate a traffic stop.  Decedent instead sped off, and Sellers followed in pursuit.  Decedent pulled into a residential driveway and around to the back of a house, where he got off the motorbike and fled on foot.  Sellers continued to pursue.  Sellers reported observing a firearm in the Decedent's hand, but Plaintiff contends he was not armed at all.  Sellers continued pursuing the Decedent into and through a wooded area, and ultimately shot Decedent in the back of the head.  Docket No. 70, pp. 11-14, ¶¶ 72-94.

Decedent was a registered member of the Cherokee Nation, *id.*, p. 3, ¶ 13, and these events all occurred in Adair County, Oklahoma, *id.*, p. 2, ¶ 1, which is within the Cherokee Nation Reservation.  The Second Amended Complaint attaches a Law Enforcement Agreement Between and Among the Cherokee Nation, the United States of America, the State of Oklahoma and political subdivisions ("Compact" or "Law Enforcement Agreement"), dated 1992 and filed with the Oklahoma Secretary of State on October 10, 1994.  Docket No. 70, Ex. 1.  The Exhibit also includes the Board of County Commissioners of Adair County's completed Addendum indicating an agreement to be bound by the Compact.  Docket No. 70, Ex. 1, pp. 3-20.  A second addendum, signed by the Adair County Commissioners in 2003, was filed with the Oklahoma Secretary of State of March 11, 2021.  *Id.*, p. 2.  The Compact provides, *inter alia*, that the Cherokee Nation may issue a Deputy Marshal's commission to each officer of other agencies, including

Sheriffs' offices, and provides that applicants for commissions must comply with certain requirements and prerequisites. *Id.*, pp. 9-11, Sec. 3(A)-(G). Sellers is and was at all relevant times an Adair County Deputy Sheriff. Docket No. 70, p. 3, ¶ 14. Plaintiff is aware that Sellers has a Cherokee Marshal Card dated June 21, 2023, almost two years after the Decedent was shot, *id.*, p. 16, ¶ 116, but Defendant's counsel represents that "all deputies of Adair County are cross deputized when they obtain full-time deputy status, which [Sellers] has held since 2020." *Id.*, ¶ 118 & Ex. 7, p. 2.

Plaintiff alleges seven causes of action in her Second Amended Complaint: (I) § 1983 claim for a Fourth Amendment violation by use of excessive force, as to Sellers; (II) § 1983 municipal liability claim under *Monell*[1] as to the Sheriff in his official capacity and the Board; (III) *Bivens*[2] action as to Sellers; (IV) *respondeat superior* claim pursuant to 51 Okla. Stat. § 151 *et. seq.*, as to the Sheriff in his official capacity; (V) wrongful death claim pursuant to 12 Okla. Stat. § 1053, as to Sellers, the Sheriff, and the Board; (VI) Oklahoma Open Records Act Violation requesting injunctive relief, pursuant to 51 Okla. Stat. §§ 24A.1-24A.18, as to the Sheriff and the Board; and (VII) Oklahoma Open Records Act Violation requesting declaratory relief, pursuant to 51 Okla. Stat. §§ 24A.1-24A.18, as to the Sheriff and the Board. All three parties move for dismissal of various claims, including motions from both the Sheriff and the Board to dismiss Plaintiff's Sixth and Seventh Causes of Action. After responsive briefing on the motions wherein Plaintiff agreed Counts VI and VII should be dismissed, Plaintiff filed a Stipulated Motion for

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[2] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)

Partial Dismissal [Docket No. 87] of Counts VI and VII, with prejudice. There being no objection, the undersigned Magistrate Judge recommends that Plaintiff's Stipulated Motion for Partial Dismissal [Docket No. 87] be GRANTED.

## ANALYSIS

## I.    Board of County Commissioners of Adair County [Docket No. 76]

The Board moves to dismiss all claims against it, Counts II, V, VI, and VII. As VI and VII are addressed above, the remaining claims for the Court to address are Counts II (municipal liability) and V (wrongful death). The Board contends that the claims against it in Counts II and V are completely duplicative of claims against the Sheriff and are therefore redundant because the Sheriff is the proper party.

"[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 Fed. Appx. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. Of Cnty. Commr's*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998); *Ky v. Graham*, 473 U.S. 159, 165-166 (1985) ("Official-capacity suits [are] . . . in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") (internal citations omitted). Moreover, under 19 Okla. Stat. § 4, as amended in 2019, "the correct means by which to name a county as a defendant in an action involving § 1983 claims . . . is to name the appropriate county officer in his or her official capacity, *not* the Board." *Kirkendall-Heller v. Bd. of Commr's*, 2021 WL 2371348, at *1 (W.D. Okla. June 9, 2021) (emphasis added); 19 Okla. Stat. § 4 ("Suit may be brought against a county by naming a county officer . . . when it is alleged that such officer in his or her official capacity is

directly or vicariously liable to plaintiff in an action not arising out of contract. Otherwise, suit may be brought against a county by naming the Board of County Commissioners of the County of _____; in actions against the Board not arising out of contract, upon motion, the Court may substitute a county officer identified in Section 161 of this title in his or her official capacity for the Board upon a showing that such county officer is better suited to represent and defend the county under the particular facts of the case.").

Plaintiff's claim for municipal liability (Count II) alleges two types of policy violations: (1) that the Sheriff failed to properly train, supervise, and discipline its employees, which amounts to deliberate indifference, *see* Docket No. 70, pp. 19-20, ¶¶ 141-145; and (2) that the Sheriff and the Board "as joint policymakers failed to make, implement, and enforce proper policies and procedures as it relates to policing within the confines of Adair County for the investigation, detention, and arrest of Native Americans," *id.*, p. 10, ¶ 146. To the extent Plaintiff alleges the first "failure-to-train claim" is also against the Board, the Court agrees that it should be dismissed for the sake of judicial economy and efficiency. *See Hayes v. Owen*, 2023 WL 2716579, at *6 (N.D. Okla. Mar. 30, 2023) ("The Court agrees with the Board that plaintiffs' claims against the Board are redundant with its claims against Sheriff Owen in his official capacity."); *Foreman v. Okla. Cnty. Sheriff*, at *4-5, 2022 WL 2513384, at *2 (W.D. Okla. July 6, 2022) (dismissing, without prejudice, claims against Board of County Commissioners for Oklahoma County as duplicative). The undersigned Magistrate Judge finds, however, as discussed below, Plaintiff's second policy claim, as to the Law Enforcement Agreement, should not be dismissed as to the Board at this time.

Similar to Count II, Plaintiff's claim for wrongful death under Oklahoma state law (Count V) alleges Sellers, as an Adair County Sheriff's Officer, wrongfully shot and killed the Decedent.  Docket No. 70, p. 27, ¶ 197.  Alternatively, she alleges Sellers was acting as a cross-deputized officer of the Cherokee Nation Marshal Service when he shot and killed the Decedent, and that the Board was the policy-maker for the governing Law Enforcement Agreement.  *Id.*, ¶ 199.  As with Plaintiff's § 1983 claim, any portion of Plaintiff's claim that Sellers was acting as an Adair County Deputy Sheriff is sufficiently raised against the Sheriff in his official capacity such that making such a claim against the Board is duplicative; however, questions remain as to the properly named policymaker with regard to the Law Enforcement Agreement, to which the Board is a signatory but not the Sheriff, and if Sellers was acting as a deputized officer of the Cherokee Nation Marshal Service.  Plaintiff essentially engages in alternative pleading because Sellers's status, as an Adair County Deputy Sheriff only or also as a cross-deputized officer of the Cherokee Nation Marshal Service, at the time of the incident is unclear at this stage of the case.

As relevant here, Exhibit 1 of the Second Amended Complaint contains a series of documents including the 1992 Law Enforcement Agreement between the Cherokee Nation, United States, State of Oklahoma, and other entities, as well as the Addendum 2003 Addendum signed by the Adair County Board and filed in 2021.  Docket No. 70, Ex. 1, pp. 2-20.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference.").  Plaintiff alleges that the Board is responsible for approving the Law Enforcement Agreement and

is a necessary party here because the Board and the Sheriff are joint policymakers as to the Law Enforcement Agreement. Docket No. 70, pp. 3-5, ¶¶ 20-28. Additionally, Plaintiff alleges that she was not provided documentation that the Sheriff's office separately adopted the Law Enforcement Agreement. *Id.*, p. 6, ¶ 36.

Plaintiff asserts that she engaged in alternative pleading because the parties dispute whether Sellers was acting pursuant to the Law Enforcement Agreement as a cross-deputized officer. Fed. R. Civ. P. 8(d) allows alternative pleading. "Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims." *Boulware v. Baldwin*, 545 Fed. Appx. 725, 729 (10th Cir. 2013); *see also Hampton v. Gen. Motors, LLC*, 631 F. Supp. 3d 1041, 1050 (E.D. Okla. 2022) ("Mr. Hampton may allege a valid warranty exists and alternatively pursue unjust enrichment should the warranty claim fail. Indeed, GM has argued here the warranty is inapplicable to the defect Mr. Hampton identified. While Mr. Hampton cannot recover under both theories, he is entitled to assert them.") (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) ("[W]hile BNSF is not entitled to a double recovery for the same injuries, it is entitled to pursue its unjust enrichment claim as an alternative claim.")). Indeed, the Court previously granted leave to file the Second Amended Complaint over Defendants' objections because "Defendants' arguments would be better addressed in a different procedural posture, such as through a dispositive motion." Docket No. 58, p. 6, *adopted*, Docket 62 (Feb. 13, 2024). The dispute as to Sellers's status appears to be an evidentiary issue more appropriate for summary judgment.

Whether Sellers was cross-deputized at the time of the Decedent's death will be pivotal in how this litigation proceeds. First, if Sellers received his individual cross-commission on June 21, 2023, as currently supported by the documentation attached to the Second Amended Complaint, *see* Docket No. 86, Ex. 1, p. 3, the Court will likely have to resolve whether, under the Law Enforcement Agreement, Sellers was operating under a general cross deputization because he obtained full-time deputy status with the Adair County Sheriff's Office prior to the 2021 shooting.[3]  *See* Docket No. 70, Ex. 7, p. 2 (Oct. 2023 Letter from Defendants' attorney) ("While you are correct that the Cherokee Marshall [sic] card produced in discovery was issued after the shooting at issue in this case, we do not concede that Deputy Sellers was not cross-deputized at the time of the incident. It is my understanding that all deputies of Adair County are cross deputized when they obtain full-time deputy status, which Skyler Sellers has held since 2020 and before the shooting at issue."). Neither party squarely addressed the legal arguments on this issue. *See Hampton v. Root9b Techs., Inc.*, 2016 WL 7868823, at *4 (D. Colo. Aug. 3, 2016) ("When a court takes judicial notice of publications like websites and newspaper articles, the court merely notices what was in the public realm at the time, not whether the contents of those

---

[3] This interpretation question is novel for this Court, has not been fully briefed in this case, and there is currently no guidance with regard to similar agreements. *See, e.g.*, *United States v. Spencer*, CR-23-119-RAW, Docket No. 59, pp. 10-11, 18 (March 18, 2024) (Report and Recommendation, adoption or rejection pending) ("The undersigned Magistrate Judge finds that neither the Deputation Agreement nor the related Addendums contain provisions permitting 'blanket cross-deputization' among City of Wewoka police officers or District 22 Task Force officers with regard to tribal members within the boundaries of the Seminole Nation, or vice versa. . . . Should the District Judge adopt and affirm this decision, all entities involved will be placed on notice that 'blanket cross-deputization' does not apply to the Seminole Nation nor any other signatory to the 2006 Deputation Agreement submitted in this case.").

articles were in fact true.") (citing *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2009); *accord Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

Additionally, if Sellers was cross deputized at the time of the incident and that is the only basis for his jurisdiction, Defendant raises a significant argument, not fully developed at this stage, that Plaintiff's § 1983 claim fails because Sellers was not "acting under color of state law." 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"); *see also Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006) ("A § 1983 action is unavailable for persons alleging deprivation of constitutional rights under color of tribal law.) (quotation omitted).

It is also relevant that, because the Board, and not the Sheriff's office, is a signatory to the Law Enforcement Agreement, the law is unclear as to whether this status would carve out a permissible exception under the second sentence of 19 Okla. Stat. § 4 ("Otherwise, suit may be brought against a county by naming the Board of County Commissioners of the County of _____[.]"), as alleged by Plaintiff, and whether this would render the wrongful death claim properly raised as to the Board *rather* than the Sheriff. The Board cites the Law Enforcement Agreement as foreclosing this argument because it contains the following provision:

> It is understood and agreed by the parties to this Agreement that the respective agencies, their agents, employees, and insurers, have no authority nor any right whatsoever to control in any manner, the day-to-day discharge of the duties of the persons commissioned pursuant to this Agreement.

Docket No. 70, Ex. 1, p. 12 (Law Enforcement Agreement, Sec. 7). It is not clear, however, that this language applies under the circumstances of this case. These same questions apply to Plaintiff's wrongful death claim under a *respondeat superior* theory. The undersigned Magistrate Judge finds it inappropriate to speculate as to the answers to these questions at this time as it implicates questions about whether Defendant Sellers was acting within the scope of his employment and who is considered his employer for purposes of the incident, and that further development of these issues is required.

The undersigned Magistrate Judge therefore finds the Board's motion to dismiss should be granted in part to any extent Plaintiff's "failure-to-train claim" is also raised against the Board, but otherwise denied to the extent Plaintiff asserts a claim with regard to the Board as signatory to the Law Enforcement Agreement.

## II.    Sheriff of Adair County, Oklahoma [Docket No. 74]

The Sheriff moves for dismissal of Plaintiff's *Respondeat Superior* (Count IV) and wrongful death claims (Count V).[4] As an initial matter, the undersigned Magistrate Judge notes the Sheriff's assertion that Counts IV and V are not independent claims, but a single claim governed by the OGTCA that therefore must be aggregated. The Oklahoma Supreme Court previously found "that the express language of 51 [Okla. Stat.] § 152(4)(c) requires

---

[4] The Sheriff also moved to dismiss Counts VI and VII, which argument is addressed above in "Procedural History and Background," *supra*, and granted by stipulation.

multiple death claims against a political subdivision to be aggregated." *Carlson v. City of Broken Arrow*, 1992 OK 163, ¶ 1, 844 P.2d 152, 153. Plaintiff appears to suggest that she raised these claims in the alternative, but the undersigned Magistrate Judge finds, under Oklahoma law, they must be aggregated as both Counts IV and Count V allege the same OGTCA wrongful death claim as to the Sheriff, and therefore recommends granting the Sheriff's motion in part, dismissing Count IV (*respondeat superior*) as duplicative. Any allegations in Count IV should thus be subsumed under Count V.

The Sheriff contends Plaintiff failed to comply with the notice requirements of the Oklahoma Governmental Tort Claims Act for either herself or on behalf of the Decedent's estate, and this Court therefore lacks jurisdiction over the claim. "A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can take two forms: a facial or a factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. By contrast, [a] factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. And when faced with a factual attack on subject-matter jurisdiction, the district court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Grace Bible Fellowship v. Polis*, 2024 WL 1340201, at *2 (10th Cir. Mar. 29, 2024) (quotations omitted). This exercise of discretion "does not convert a Rule 12(b)(1) motion into a summary[-]judgment motion unless resolution of the jurisdictional question is intertwined with the merits[.]" *Grace Bible*, 2024 WL 1340201, at *2 (quotation omitted).

The Sheriff appears to be making a factual attack, providing evidence to challenge jurisdiction based on the timing of Plaintiff's appointment as Decedent's personal representative. The Sheriff contends that notice was not properly accomplished here because Plaintiff submitted a Notice of the OGTCA claim on June 27, 2022, but she was not officially appointed personal representative until May 23, 2023. The Sheriff presents several documents from Adair County District Court regarding Decedent's estate and Plaintiff's appointment, *see* Docket No. 74, Ex. 3, but fails to provide the June 2022 OGTCA notice. Likewise, Plaintiff fails to provide the notice in her response, and the Court is unable to locate it in any other filing. The undersigned Magistrate Judge is unable to fully address Defendant's factual attack with the documentation in the record as provided, and thus recommends the remaining portion of Defendant's partial motion to dismiss be denied. *Equal Emp. Opportunity Comm'n v. 'Murica, LLC*, 2023 WL 6536783, at *2 (D. Colo. Sept. 25, 2023) ("When reviewing a factual challenge, courts cannot 'presume the truthfulness of the complaint's factual allegations,' and may consider documents outside the complaint without converting the motion to dismiss into a motion for summary judgment.") (quoting *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)).

Even if the Second Amended Complaint allegations coupled with the submitted documents were sufficient to address the merits of the argument, the undersigned Magistrate finds the OGTCA notice was sufficient to confer jurisdiction if, as Plaintiff alleges, she filed the Notice as Decedent's personal representative, she was later officially

appointed Decedent's personal representative, and no other challenge to the Notice has been raised.

In Oklahoma, the cause of action for wrongful death, in derogation of the common law, exists solely by virtue of statute. "[A]ny right of survivors to bring an action and the nature of damages allowed are based upon the wrongful death statutes." *Farley v. City of Claremore*, 2020 OK 30, ¶ 41, 465 P.3d 1213, 1233. 12 Okla. Stat. § 1053(A), provides:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission.

The statutory framework also includes "a hierarchy of persons who may sue in a wrongful death action." *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶ 11, 895 P.2d 731, 734. 12 Okla. Stat. § 1054 states:

> In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased.

In other words, "[a] wrongful-death claim may be pressed *only* by persons authorized to bring it (§§ 1053 and 1054)." *Ouellette v. State Farm Mut. Auto. Ins. Co.*, 1994 OK 79, ¶ 9, 918 P.2d 1363, 1366; *see also Walker v. City of Moore*, 1992 OK 112, ¶ 8, 836 P.2d 1289, 1292 (superseded by statute on other grounds) ("[T]he Legislature has proscribed separate notices of claim for recovery of personal loss suffered by the injured person and derivative loss suffered by a spouse."). Pursuant to the hierarchy in 23 Okla. Stat. § 1054, the action

must be brought by the personal representative, but if no representative has been appointed, then it may be brought by the widow, or where there is no widow, by the decedent's next of kin.  "'[P]ersonal representative' includes executor, administrator, administrator with will annexed, conservator, guardian and persons who perform substantially the same function under the law governing their status and includes a successor personal representative appointed to succeed a previously appointed personal representative."  58 Okla. Stat. § 11.  In general, "timely filing by any of the enumerated parties 'who may sue' will properly commence a wrongful death action.  If it transpires that the person who filed did not have the preeminent right to prosecute the action, that person should be substituted by the real party in interest, according to 12 [Okla. Stat.] § 2017, so as to prevent multiplicity of actions."  *Weeks*, 1994 OK CIV APP 171, ¶¶ 15-16, 895 P.2d at 735; *see also Roth v. Mercy Health Ctr., Inc*., 2011 OK 2, ¶ 18, 246 P.3d 1079, 1086 ("[A] personal representative appointed later in time is nonetheless the personal representative as anticipated in the wrongful death act. Read together, sections 1053, 1054—and in the appropriate instances, section 11—properly invoke a court's jurisdiction, so long as one of the statutorily enumerated parties maintains the action.").

A wrongful death claim against a Governmental entity entails the additional requirements of the OGTCA, including "giving timely written notice of a claim to the governmental entity that is alleged to be liable for the loss, and bringing suit in a timely manner following a denial of the claim." *Dorrough v. Geo Grp., Inc.*, 2016 WL 3829142, at *8 (W.D. Okla. July 12, 2016).  "[T]he [O]GTCA specifically requires compliance with its provisions before filing suit, but it allows a personal representative of the decedent's

estate either to provide the required notice within one year after the death occurs or to rely on a previous notice given by the decedent if the notice 'would have been sufficient had he lived.'" *Id.*, 2016 WL 3829142, at *10 (quoting 51 Okla. Stat. § 156(F)). The OGTCA does not define "personal representative," *Bard v. Bd. Of Cty. Comm'rs of Cty. Of Okla.*, 2007 WL 9711128, at *1 n.3 (W.D. Okla. Oct. 9, 2007) ("The Act does not define 'personal representative.'"), so the Court looks to Oklahoma probate procedure for guidance. 58 Okla. Stat. § 11 provides that a "'personal representative' includes executor, administrator, administrator with will annexed, conservator, guardian and persons *who perform substantially the same function under the law governing their status*[.]" (emphasis added). *See* 51 Okla. Stat. § 164 (state laws and procedural rules applied to actions brought under the OGTCA to the extent they are not inconsistent with its provisions).

The Supreme Court of Oklahoma held in similar circumstances that parents, as heirs of a minor child "fall within the statutory definition of 'personal representative,' and are thus the proper parties to bring this tort action." *Calvert v. Tulsa Pub. Sch., Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, 1996 OK 106, ¶¶ 15& 20, 932 P.2d 1087, 1091 (superseded by statute on other grounds) ("As we stated earlier, the Calverts were serving in substantially the same function as personal representatives. They were later appointed as personal representatives. Furthermore, they timely filed the claim against the School in their capacity as parents and heirs of LaQuita. The School was on notice of the claim made by the Calverts. The School does not deny that the Calverts followed the procedural rules of notice set forth in the Act."). Furthermore, the Court found that "[e]ven if they were not

[the proper parties], we hold that the Oklahoma law permits the substitution of parties in a situation such as this." *Id.*

The undersigned Magistrate Judge agrees with the Sheriff that strict compliance with the notice requirements of the OGTCA is mandatory, *see Minie v. Hudson*, 1997 OK 26, ¶¶ 6-8, 934 P.2d 1082, 1085-1086 (recognizing that the line of cases allowing substantial compliance with the OGTCA notice requirements had been superseded by statute at 51 Okla. Stat. § 156), but finds that this prerequisite is met here if, as Plaintiff alleges, she filed the Notice as Decedent's personal representative, she was later officially appointed Decedent's personal representative, and no other challenge to the Notice has been raised. *See, e.g.*, *Bard*, 2007 WL 9711128, at *2 (W.D. Okla. Oct. 9, 2007) ("While it would have been preferable for Mr. Bard to have already obtained official status as the personal representative of the decedent's estate, the court finds that his situation is sufficiently similar to that of the parents in *Calvert*, to allow him to file suit under the Act for Ms. Baker's death."). The Sheriff's motion to dismiss Count V (wrongful death) should therefore be denied.

Finally, the Sheriff asserts that Plaintiff in her individual capacity lacks standing to assert individual claims against the Sheriff pursuant to § 1983 (Count II), and that she has further failed to state a claim. Plaintiff responds that she is only asserting § 1983 claims as a representative of Decedent's estate, and not § 1983 claims on her own behalf. Accordingly, any claim pursuant to § 1983 based on Plaintiff's individual capacity (only) is hereby dismissed by agreement of the parties.

The undersigned Magistrate Judge therefore recommends that the Sheriff's motion to dismiss be GRANTED IN PART, to the extent Count IV is dismissed as duplicative and any claim pursuant to § 1983 based on Plaintiff's individual capacity (only) is hereby dismissed by agreement of the parties, but otherwise DENIED.

### III.    Sellers's Motion to Strike and/or Partial Motion to Dismiss [Docket No. 75]

Defendant Sellers's motion, titled "Skyler Sellers' Motion to Strike, or in the Alternative Partial Motion to Dismiss Plaintiff's Second Amended Complaint," appears to only be a partial motion to dismiss, as Sellers provides no indication as to what he is seeking to strike. Plaintiff's Second Amended Complaint raises three causes of action as to Sellers: excessive force in violation of the Fourth Amendment (Count I) in his individual and official capacities, a *Bivens* claim (Count III), and wrongful death (Count V). Sellers contends he is not a proper party to the wrongful death claim (Count V), that Plaintiff lacks standing to assert individual claims against him pursuant to § 1983 (Count I), that Plaintiff seeks to impermissibly expand *Bivens* (Count III), and that Plaintiff cannot sustain the § 1983 claim against Sellers in his official capacity (Count I). Notably, Sellers does not move to dismiss the § 1983 claim against him in his individual capacity (Count I). The undersigned Magistrate Judge therefore finds Sellers's motion should be granted in part and denied in part, as follows.

A.  Count V (Wrongful Death).  Sellers first contends he is not a proper party to Plaintiff's Oklahoma wrongful death claim (Count V) because the Second Amended Complaint alleges he was acting within the scope of his employment. Plaintiff disagrees, asserting that, while she pleads in certain places that Sellers was acting within his

employment, she pleads in the alternative that he was acting outside the scope of his employment. As to the latter allegations, Plaintiff first states, without supporting authority, that Sellers had no authority to enforce the law that the time of incident because he had not been cross deputized, and that status alone renders him operating outside the scope of his employment. Plaintiff does not develop the argument further as to how such status alone creates liability under the OGTCA for operating outside the scope of his employment. Plaintiff additionally asserts, however, that Sellers "engaged in a course of conduct that constitutes the tort of negligence, gross negligence, recklessness, and/or wanton and willful conduct," and that he "was not providing any law enforcement protective services at the time that he negligently, reckless, and/or willfully and wantonly used lethal force against Decedent[.]" Docket No. 70, p. 25, ¶¶ 181, 184.[5]

Under the doctrine of *respondeat superior*, "an employer is generally held liable for the willful acts of an employee acting within the scope of employment." *Gowens v. Barstow*, 2015 OK 85, ¶ 12, 364 P.3d 644, 650. The OGTCA defines "scope of employment" as:

> [P]erformance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.

---

[5] These allegations are lodged under Count IV, Plaintiff's *respondeat superior* claim as to the Sheriff in his official capacity. However, Count V, the wrongful death claim as to all defendants including Sellers, incorporates and sets forth the previous allegations. Docket No. 70, p. 26, ¶ 194. And as discussed in II, *supra*, Counts IV and V are aggregated as one claim.

51 Okla. Stat. § 152(12). "[O]ne acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Gowens*, 2015 OK 85, ¶ 12, 364 P.3d at 650 (citing *Nail v. City of Henryetta*, 1996 OK 12, ¶ 11, 911 P.2d 914, 917).

However, an employee "may be named as defendant under alternative allegations that such person did not act within the scope of employment." 51 Okla. Stat. § 153(C). "For an officer to be deemed outside the scope of employment due to a lack of good faith, there must be 'acts that clearly show malice or bad faith.' The Oklahoma Supreme Court has held that mere 'reckless disregard' for the rights or safety of others does not satisfy this standard." *Graham v. City of Lone Grove, Oklahoma*, 2022 WL 2070607, at *6 (E.D. Okla. June 8, 2022) (quoting *Gowens*, 2015 OK 85, ¶¶ 20-21, 364 P.3d at 652); *see also Mustain v. Grand River Dam Auth.*, 2003 OK 43, ¶ 21, 68 P.3d 991, 999, *as corrected* (Apr. 23, 2003), *as corrected* (May 7, 2003) ("An employee whose acts are malicious, willful, wanton and in bad faith is not acting in the scope of his employment."). "Although an employee acts outside the scope of employment where they engage in willful and wanton conduct, acts performed with reckless disregard do not necessarily equate to bad faith and fall outside the scope of employment." *Higginbottom v. Mid-Del Sch. Dist.*, 2016 WL 951691, at *4 (W.D. Okla. Mar. 9, 2016) (citation omitted). "[E]ven willful acts of employees causing serious harm may occur within the scope of employment if incident to the employer's services or to an attempt to perform those services." *Deal v. Brooks*, 2016 OK CIV APP 81, ¶ 36, 389 P.3d 375, 386.

Whether an employee was acting within the scope of his employment "is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts." *Nail*, 1996 OK 12, ¶ 13, 911 P.2d at 918; *see also Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 8, 212 P.3d 1158, 1163 ("Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact."). As previously noted, Plaintiff is entitled to plead in the alternative. *See, e.g.*, *Gaines v. City of Moore*, 2022 WL 1913447, at *7 (W.D. Okla. June 3, 2022) ("That they have pleaded Lloyd acted intentionally to violate City policies does not mean Plaintiffs are foreclosed from asserting Lloyd acted within the scope of his employment, regardless of whether those assertions contradict each other or not.") (citing *Boulware v. Baldwin*, 545 Fed. Appx. 725, 729 (10th Cir. 2013) (unpublished) ("Federal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims.").

Accordingly, "the issue 'hinge[s] on whether one acted within the scope of employment *by engaging in work assigned, or if doing what was proper, necessary and usual to accomplish the work assigned*, or doing that which was customary within the particular trade or business.'" *Deal*, 2016 OK CIV APP 81, ¶ 35, 389 P.3d at 386 (quoting *Bosh v. Cherokee Cty. Bldg. Auth.*, 2013 OK 9, ¶ 29, 389 P.3d 375, 385-386 (*superseded by statute*)). In this case, Plaintiff alleges that Sellers pursued Decedent following an observed traffic violation and additional citation offense to a private residence, around the back of it, and through the woods, chasing Decedent, drawing a weapon, and shooting him in the back of the head. Docket No. 70, pp. 12-14, ¶¶ 77-94. She also alleges that Sellers

-21-

"engaged in a course of conduct that constitutes the tort of negligence, gross negligence, recklessness, and/or wanton and willful conduct," and that he "was not providing any law enforcement protective services at the time that he negligently, reckless, and/or willfully and wantonly used lethal force against Decedent[.]"  Docket No. 70, p. 25, ¶¶ 181, 184. Although the alternative nature of the claims could have been better drafted, Plaintiff propounded sufficient alternative factual allegations in the Second Amended Complaint to "'raise an inference of bad faith sufficient to withstand dismissal pursuant to the [GTCA].'" *Doe v. Oologah-Talala Indep. Sch. Dist.*, 2022 WL 17406372, at *11 (N.D. Okla. Dec. 2, 2022) (quoting *Romero v. City of Miami*, 8 F. Supp. 3d 1321, 1333 (N.D. Okla. 2014) (citing *Gowens*, 2015 OK 85, ¶ 21, 364 P.3d at 652 (rejecting the proposition that "malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others"); *Shepard v. CompSource Okla.*, 2009 OK 25, ¶ 16, 209 P.3d 288, 293 ("[A]cts contrary to the interests of the employer are not within the scope of employment.")). Additionally, the undersigned Magistrate Judge recognizes that "'while [the scope-of-employment] issue may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss.'" *Doe*, 2022 WL 17406372, at *12 (quoting *Pendegraft v. Bd. of Regents of Okla. Colls.*, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019)).  The undersigned Magistrate Judge finds that dismissal is not appropriate as to Sellers for Count V at this stage based on Plaintiff's alternative pleadings that Sellers was acting outside the scope of his employment, and therefore recommends Defendant Sellers's motion to dismiss be denied as to Plaintiff's wrongful death claim (Count V) against Sellers.

B.  § 1983 and Plaintiff's Individual Capacity.  Sellers next asserts Plaintiff lacks standing to raise an individual capacity claim pursuant to § 1983.  As with the Sheriff, Plaintiff responds that she is only asserting § 1983 claims as a representative of Decedent's estate, and not § 1983 claims on her own behalf.  Accordingly, any claim pursuant to § 1983 based on Plaintiff's individual capacity (only) is hereby dismissed by agreement of the parties.

C.  Count III (*Bivens*).  Sellers contends Plaintiff may not maintain a *Bivens* action against him.  Plaintiff asserts without support that she alleged a "recognized" *Bivens* claim, but the undersigned Magistrate Judge disagrees and finds Plaintiff seeks to create a new *Bivens* remedy here. *See Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000) ("Although the plaintiffs have alleged that the tribal defendants acted as federal agents, our standard of review does not require that we accept 'conclusory allegations, unwarranted inferences, or legal conclusions' in a complaint.") (quoting *Hackford v. Babbitt,* 14 F.3d 1457, 1465 (10th Cir. 1994)).

A key issue in this case is whether Sellers was acting as only an Adair County Sheriff Deputy, or if he was cross-deputized as a Cherokee Nation Marshal at the time of the incident in this case.  If cross-deputized, Sellers contends he was acting pursuant to an agreement with the Cherokee Nation and was at most a tribal agent, but never a federal agent.  Plaintiff contends that Sellers "exercised federal authority through cross deputization and acting pursuant to his Cross Deputization Agreement [the Law Enforcement Agreement] between the Adair County Sheriff's Office and the Tribal Nation in Adair County, Oklahoma."  Docket No. 85, p. 16.  The undersigned Magistrate Judge

notes that, however, the Law Enforcement Agreement attached to the Second Amended Complaint was certified to the State of Oklahoma as "between and among The Cherokee Nation, *The United States of America*, The State of Oklahoma, and its political subdivisions, the various Boards of County Commissioners, and Various Law Enforcement Agencies."  Docket No. 70, Ex. 1, p. 6 (emphasis added).  The question then becomes whether the United States' status as a signatory to the Law Enforcement Agreement intended to create the result that all cross-deputized officers became "federal agents" for purposes of *Bivens*.  For the reasons set forth below, the undersigned Magistrate finds that it does not.

"[C]ourts analyze[] *Bivens* claims in a two-step process: first, a court had to ask whether 'the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'  Second, if the case is different—in other words if the 'context is new'—then a court must analyze whether the 'special factors counselling hesitation' apply such that it should not expand *Bivens*.  The Court reaffirmed this framework as recently as 2020."  *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135-140 (2017) (citing *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).  "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Egbert v. Boule*, 596 U.S. 482, 492 (2022).

"First and foremost, we are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances."  *Silva*, 45 F.4th at 1140 (quoting *Egbert*, 596 U.S. at 491) (quoting *Abbasi*,

-24-

582 U.S. at 121)); *see also Egbert*, 596 U.S. at 502-503 (Gorsuch, J., concurring in the judgment)). "To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation." *Egbert*, 596 U.S. at 503 (Gorsuch, J.) ("Weighing the costs and benefits of new laws is the bread and butter of legislative committees. It has no place in federal courts charged with deciding cases and controversies under existing law.").

> When asked to imply a *Bivens* action, our watchword is caution. [I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [it]. [E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy. Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case, no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogat[e] legislative power.

*Id.* at 491-492 (internal quotations omitted). Accordingly, "[a] *Bivens* remedy should not be created where there exists any alternative existing process for protecting the constitutional interest." *Horton v. Davis*, 2014 WL 2593075, at *5 (D. Colo. June 10, 2014). "But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("[A]ny freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to

vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified.").

Plaintiff essentially alleges that all state or municipal officers cross deputized under an appropriate scheme to which the United States is a signatory are therefore operating under color of federal law when acting under the authority of such cross deputization. Sellers is only a federal actor here if he "act[ed] jointly with, under the direction of, or on behalf of the federal government." *Romero v. Peterson*, 930 F.2d 1502, 1507 (10th Cir. 1991). It is not at all clear that, even if Sellers was acting under the Law Enforcement Agreement, he was therefore a federal agent. Plaintiff provides no legal authority for this position, only asserting that if Sellers did not have state authority, the "only other source of authority for Sellers is federal authority." Docket No. 85, p. 18 (Response Brief). This ignores Tribal authority, as the Cherokee Nation is a separate sovereign. *State ex rel. Matloff v. Wallace*, 2021 OK CR 21, ¶ 15, 497 P.3d 686, 689 (Post *McGirt*,[6] the Oklahoma Court of Criminal Appeals "reaffirm[ed their] recognition of the Cherokee . . . Reservation[.]").

In light of Supreme Court authority cautioning against expanding *Bivens*, the undersigned Magistrate Judge recommends the Court decline to create a *Bivens* action under these circumstances even at this stage of the case. *See, e.g.*, *Horton*, 2014 WL 2593075, at *5 ("Based on the Supreme Court's reluctance to recognize new *Bivens* remedies and the availability of alternative means to seek relief for his alleged

---

[6] *McGirt v. Oklahoma*, 591 US _, 140 S. Ct. 2452 (2020).

constitutional violations, I recommend that the court decline to create a *Bivens* remedy for the plaintiff's claims."); *Nally v. Graham*, 551 F. Supp. 3d 1062, 1078 & n.68 (D. Kan. 2021) ("[T]his Court 'declines 'to create a new substantive legal liability without legislative aid and as at the common law' because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it[,]'" citing "Congress' explicit deference to the Executive Branch in matters of Native American affairs[.]") (quoting *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 302 (1947)).

D.  § 1983 – Sellers in his Official Capacity.  Finally, Sellers contends Plaintiff's claims as to him in his official capacity should be dismissed because he did not have final policymaking authority as an Adair County Deputy Sheriff.  Plaintiff contends that an official capacity claim is not dependent on whether Sellers possessed final policy making authority.

"To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law." *Kvech v. New Mexico Dept. of Public Safety*, 987 F. Supp. 2d 1162, 1186 (D. N.M. 2013) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).  Thus, suing Sellers in his official capacity as a Deputy with the Adair County Sheriff's Department is the same thing as suing the Sheriff's office. *Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1236 (W.D.

Okla. 2009) ("A defendant sued in his official capacity is a different 'legal personage' than one sued in his individual, or personal capacity."). Moreover, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). For that reason, the officer or agent in his or her official capacity must have final policymaking authority. *Rodriguez v. Bd. of Cnty. Commissioners of Cnty. of Wagoner*, 2020 WL 1979329, at *1 (E.D. Okla. Apr. 24, 2020) ("The officer, however, must have 'final policymaking authority.'") (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Plaintiff concedes Sellers does not have policymaking authority but cites case law that "liability against a municipal entity or other local government body may exist 'even though the action is taken by an individual other than the final policymaker.'" *Langford*, 670 F. Supp. 2d at 1236 (quoting *Moss v. Kopp,* 559 F.3d 1155, 1169 (10th Cir. 2009)). Plaintiff already alleges *Monell*/municipal liability claims as to both the Sheriff and the Board; accordingly, even if such a claim were available here because Sellers was a policymaker (and it is not) the same claim as to Sellers in his official capacity is duplicative because both the Sheriff and the Board are already named. Because Plaintiff fails to allege a cognizable claim as to Sellers in his official capacity, all allegations in that regard should be dismissed. Accordingly, the undersigned Magistrate Judge recommends that Plaintiff's claims pursuant to § 1983 as to Sellers in his official capacity be dismissed. *See, e.g.*, *Rodriguez*, 2020 WL 1979329, at *1 ("In her First Amended Complaint, plaintiff does not allege that any of the Individual Defendants have final policymaking authority, that any

policymaking authority had been delegated to them, or that they were exercising any *de facto* policymaking authority. . . . The 'official capacity' concept has no application to these Individual Defendants and the purported official capacity claims against them will therefore be dismissed."); *Carbajal v. St. Anthony Cent. Hosp.*, 2013 WL 4799654, at *3 (D. Colo. Sept. 6, 2013) ("I therefore find and conclude that plaintiff's constitutional claims against St. Anthony's, Centura Health, Apex, and the City and County of Denver, *as well as against all individual defendants in their official capacities*, must be dismissed.") (emphasis added).

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Plaintiff's Stipulated Motion for Partial Dismissal [Docket No. 87] be GRANTED. Additionally, undersigned Magistrate Judge hereby RECOMMENDS Sheriff Jason Ritchie's Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 74] be GRANTED IN PART and DENIED IN PART, that The Board of County Commissioners of Adair County's Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 76] should be GRANTED IN PART and DENIED IN PART, and that Skyler Sellers' Motion to Strike, or in the Alternative Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Docket No. 75] be GRANTED IN PART and DENIED IN PART. In the event this Report and Recommendation is adopted in whole, the remaining claims and dismissed claims would be set forth as follows:

Count I (Excessive Force): Remains as to Sellers in his individual capacity only;
Count II (Municipal Liability): Remains as to the Sheriff and the Board in the
alternative.

Count V (Wrongful Death):  Remains as to Sellers, as well as the Sheriff and the Board in the alternative.

And

Count III (*Bivens*):  Dismissed
Count IV (*Respondeat Superior*):  Dismissed as duplicative
Count VI (Open Records Act):  Dismissed by agreement
Count VII (Open Records Act):  Dismissed by agreement.

Any objections to this Report and Recommendation must be filed within fourteen days.  *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 29th day of May, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**